UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IRON THUNDERHORSE,          :
      Plaintiff,         :
               :
   v.              :         NO. 3:15-cv-375 (SRU)
               :
JAMES E. DZURENDA, et al.,    :
      Defendants.     :

INITIAL REVIEW ORDER

The plaintiff, Iron Thunderhorse, currently incarcerated at Bridgeport Correctional

Center in Bridgeport, Connecticut, commenced this action *pro se* pursuant to 42 U.S.C. § 1983

(2000). He names as defendants Acting Commissioner of Correction James E. Dzurenda,

Warden Jose Feliciano, Warden William Faneuff, Warden K. Jones, Supervisor of Connecticut

Department of Correction Marshals, Reverend Anthony Bruno, and Director of Health Care

Bush. Thunderhorse styles his complaint as a class action and asserts claims challenging the

conditions of confinement at three correctional facilities as violating the Constitution as well as

the Americans with Disabilities Act and the Religious Land Use and Institutionalized Persons

Act. He seeks only declaratory and injunctive relief.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and

dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon

which relief may be granted, or that seeks monetary relief from a defendant who is immune from

such relief. *Id.* In reviewing a *pro se* complaint, the court must assume the truth of the

allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendants fair notice of the

claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. However, *pro se* documents are liberally construed and interpreted to raise the strongest arguments they suggest. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

I.    Allegations

Thunderhorse is Grand Seechem, Legal Sovereign and Culture-Bearer of the Quinnipiac and Wappinger-Mattabesec Confederacy, an Indian tribe indigenous to Connecticut. He is a practitioner of Native Shamanism.

On August 15, 2014, a Friday, Thunderhorse was arrested in New Haven and taken to the New Haven Police Department where he remained until he was arraigned the following Monday. Over the weekend, Thunderhorse was taken to Yale New Haven Hospital for treatment. Thunderhorse includes allegations describing his treatment at the police department. However, those conditions are not detailed in this order because no persons from the New Haven Police Department are included as defendants in this case.

For more than ten years, Thunderhorse has used a cane for the blind. Upon his release from the hospital, staff recommended use of a wheelchair. During the incidents underlying this action, Thunderhorse was provided only a walker which was insufficient to address his visual impairment.

Thunderhorse was taken to the New Haven Superior Court which was not handicap accessible. Marshals carried Thunderhorse up a long flight of stairs by his armpits to access the courtroom. This caused Thunderhorse to suffer severe pain. On the way back down the stairs,

his shoe fell off and his pants fell down.  As a result, he almost fell down the flight of stairs.

Thunderhorse was shackled with a chain that was too short to enable him to step into the transport van.  This caused him to bruise his shins every time he was transported.  When he arrived at New Haven Correctional Center, there was no handicap ramp.  Thunderhorse fell three times trying to ambulate without his cane.

While at New Haven Correctional Center, Thunderhorse was deprived of outdoor recreation, gym recreation, and handicap aids for his disabilities.  He was confined in a four-person cell with psychiatric patients and detoxing patients who posed a danger to him rather than in a two-person cell directly across the hall.  Twice a day, he was placed, along with fifty other inmates, in a small room with twelve seats to wait for diabetic testing.  Thunderhorse was required to stand in this room for an hour causing him to suffer back and leg spasms.

Thunderhorse was transferred to Hartford Correctional Center.  Although there was a ramp to access the facility, the cells were not handicap accessible; there were no hospital beds or handicap showers.  Thunderhorse was housed in a two-person cell but was not provided a hospital bed.  He was not afforded outdoor recreation or gym recreation.

There were no law libraries at Hartford or New Haven Correctional Center. Thunderhorse's counselor at Hartford Correctional Center made him free copies of legal papers. Hartford was sanitary, while New Haven was not.  Hartford housed psychiatric patients in a separate section; New Haven did not.  At Hartford, guards used attacked dogs and pepper spray to discipline or intimidate inmates in the psychiatric section on the floor where Thunderhorse was housed.

Thunderhorse was transferred to Bridgeport Correctional Center.  The transporting officers were unnecessarily rough.  The handcuffs and black box cut off circulation to his wrists

3

and the shackles dug into his ankles.  The tether chain was too short to enable him to stand erect.  Bridgeport Correctional Center had no outside ramp so Thunderhorse had to negotiate two step landings to access the facility.

Thunderhorse has been housed in the Bridgeport hospital wing which includes eight medical cells.  Originally designed for two hospital beds, a third restraint bed has been added to each room.  There is no other furniture in these cells.  When all cells are full, staff puts new arrivals on the floor in plastic "boats."  At times, there have been five inmates in Thunderhorse's cell, some of whom require walkers to ambulate.

Upon release from the hospital wing, inmates are sent to the gym where they sleep on the floor in the plastic boats.  Up to fifty inmates may be housed in the gym with only three toilets.  Utilizing the gym for housing deprives all inmates of indoor recreation during the winter months.

The hospital wing includes a small dayroom containing two tables and two telephones.  A back room contains three shower stalls none of which are handicap accessible, one toilet and a bathtub.  The showers are never hot.  The area also contains discarded broken portable toilets.  The area is filthy and unsanitary.

Inmates in the hospital wing are afforded two hours of recreation per day.  Inmates in general population are afforded six hours of recreation per day.

Thunderhorse is representing himself in state criminal matters.  There is no law library to enable him to do research.  His stand-by counsel gathers cases and procedural materials for the plaintiff, but the plaintiff's access to his stand-by attorney has been "impeded by administrative obstacles."  Doc. #1 at 26, ¶ 44.  On two occasions, Thunderhorse was provided several boxes of legal materials including copies of forms and laws.  His visual disability combined with the condition of the documents prevented him from using the documents.

4

Thunderhorse submitted several requests for access to Native American religious services.  He was directed to write to the Head Chaplain.  The plaintiff has not received any response to his requests.  Thunderhorse has requested a transfer to a facility with Native American services.  His request has been ignored.

Forms produced by the Department of Correction and sent to Thunderhorse by the state court use fonts too small for him to read.

Thunderhorse sought assistance from the University of Connecticut optometry department.  He waited two months for an examination and over 100 days for glasses.  He received single-vision glasses instead of bifocals.  He can read with the glasses if he uses only his left eye and holds the page close to his eye.

Thunderhorse has been taken to St. Vincent Hospital for cardiac issues.  Upon his return to Bridgeport Correctional Center his keep-on-person nitroglycerin tablets were not issued.  When he requested a tablet for angina, a nurse denied the request.

Incoming and outgoing mail is not timely delivered and there is no appeal process for mail that is rejected.  Carbon paper is not provided for inmates or sold in the commissary.  Legal documents may be copied for free if done by the library supervisor but cost $.35 per page if made by the hospital counselor.  At Hartford Correctional Center and New Haven Correctional Center, Thunderhorse received free legal copies.

II.   Analysis

Thunderhorse contends that the defendants have violated his First Amendment right to free exercise of religion, First Amendment right to petition the government for redress of grievances, Sixth Amendment right of access to the courts, Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment rights to due process and equal

protection of the laws.  In the introduction to his complaint, Thunderhorse also asserts claims under the Institutionalized Persons Act, 42 U.S.C. § 1997, Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-3 and the Civil Rights Remedies Equalization Act, 42 U.S.C. § 2000d-7.

A.  Class Action

Thunderhorse states that he is asserting claims on behalf of a class of similarly situated individuals.  He cannot, however, bring a class action lawsuit *pro se.  See Morneau v. Connecticut*, No. 3:07cv819(JBA), 2008 WL 2704817, at *3 (D. Conn. Jul. 7, 2008) (holding that *pro se* prisoner cannot adequately represent interest of class of prisoners); *Nwanze v. Philip Morris Inc.*, 100 F. Supp. 2d 215, 218 n.3 (S.D.N.Y. 2000) (acknowledging "well established federal rule forbidding *pro se* plaintiffs from conducting class action litigation").  Accordingly, any claims asserted on behalf of unidentified prisoners are dismissed.

B.  Institutionalized Persons Act and Civil Rights Remedies Equalization Act

Thunderhorse states that he brings this action for violation of his rights under these two statutes.  Neither statute, however, creates a private right of action on behalf of an inmate.  The Institutionalized Persons Act, 42 U.S.C. § 1997, et seq., authorizes the Attorney General to bring an action in federal court on behalf of persons institutionalized by the state under unconstitutional conditions.  *See Rhodes v. Chapman*, 452 U.S. 337, 361 n.8 (1981).  The act does not include any private right of action that may be brought by a prisoner himself.

The Civil Rights Remedies Equalization Act, 42 U.S.C. § 2000d-7, provides that a state does not retain Eleventh Amendment immunity with regard to violation of certain named civil rights statutes.  Although Thunderhorse may raise that statute if the defendants asserted an Eleventh Amendment immunity defense to covered claims, the statute does not provide a private

6

right of action on his behalf.

Any claims asserted pursuant to the Institutionalized Persons Act and the Civil Rights Remedies Equalization Act are dismissed pursuant to 28 U.S.C. § 1915A.

ORDERS

Accordingly, the court enters the following orders:

(1)     Any claims asserted on behalf of any other inmate or class of inmates are **DISMISSED** pursuant to 28 U.S.C. § 1915A.  This case will proceed only on claims personal to the plaintiff, Iron Thunderhorse.

(2)     All claims pursuant to the Institutionalized Persons Act and the Civil Rights Remedies Equalization Act are **DISMISSED** pursuant to 28 U.S.C. § 1915A.

(3)     The plaintiff paid the filing fee to commence this action.  Thus, he is responsible for effecting service of the complaint on the remaining defendants in their official capacities.

The plaintiff shall effect service on the remaining defendants in their official capacities in accordance with Rule 4, Fed. R. Civ. P., within **90 days** from the date of this order and file returns of service within **100 days** from the date of this order.

(4)     The Clerk shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint either an answer or motion to dismiss within **120 days** from the date of this order.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **nine months (270 days)** from the date of this order.  Discovery requests need

not be filed with the court.

(7)    All motions for summary judgment shall be filed within **ten months (300 days)** from the date of this order.

(8)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)    If the plaintiff changes his address at any time during the litigation of this case, Local Civil Rule 83.1(c)2 provides that the plaintiff **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

        **SO ORDERED** this 7th day of April 2015, at Bridgeport, Connecticut.


                                        /s/ STEFAN R. UNDERHILL
                                        Stefan R. Underhill
                                        United States District Judge